USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-4-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- x
DORNOCH LTD. for and on behalf of      :
Underwriting Members of Lloyd's        :
Syndicate 1209,                        :
                                       :        09 CV 3258 (JSR)
                                       :
           Plaintiff,                  :          OPINION
                                       :
      -v-                              :
                                       :
PBM HOLDINGS, INC. and PBM             :
NUTRITIONALS LLC,                      :
                                       :
           Defendants.                 :
-------------------------------------- x

JED S. RAKOFF, U.S.D.J.

        Plaintiff Dornoch Ltd. brings this declaratory judgment

action for and on behalf of the Underwriting members of Lloyd's

Syndicate 1209 (the "Underwriters") against defendants PBM Holdings,

Inc. and PBM Nutritionals LLC (collectively "PBM"), which were the

Underwriters' insureds under product contamination insurance policy

No. B0799/EL024800b ("the Policy").  The Underwriters seek a

declaration that PBM is not entitled to coverage under the Policy for

a loss that occurred in early 2009, because PBM allegedly failed to

meet a condition precedent to coverage in that it allegedly failed to

cooperate with the Underwriters by refusing to provide relevant

information and documents regarding its claim.

        Shortly after the action was brought, PBM moved to dismiss the

Complaint either pursuant to the prior-pending-action doctrine or for

failure to join an indispensable party (namely, three other insurers

who issued commercial property policies to PBM); in the alternative,

PBM sought discretionary transfer of this action to the Eastern

District of Virginia, where a related case between the parties is

currently pending. The Underwriters, in turn, cross-moved for
judgment on the pleadings, arguing that PBM has effectively conceded
in its pleadings that it failed to comply with the Policy's
cooperation clause. By Order dated July 17, 2009, the Court denied
all motions in their entirety. This Opinion explains the reasons for
those rulings.

The Policy, issued by the Underwriters through their managing
agent XL London Market Ltd., provides product contamination coverage
to PBM for the period March 17, 2008 to March 17, 2009. See Amended
Complaint ("Compl.") ¶ 10, Answer ¶ 10. The Policy contains a Choice
of Law and Jurisdiction Clause which provides that, "[u]nless
otherwise stated herein," "[t]his Policy shall be construed according
to the laws of the State of New York, and the Insured and
Underwriters irrevocably consent to the jurisdiction of the United
States District Court and the State courts of New York, [and] agree
that any action relating to any dispute under this Policy shall only
be brought in said courts." Compl. Ex. A at 19. Additionally, one
of the Policy's specific endorsements contains a "Service of Suit
Clause," which states, in part, that "in the event of the failure of
the Underwriters hereon to pay an amount claimed to be due hereunder,
the Underwriters hereon, at the request of the Insured . . . will
submit to the jurisdiction of a Court of competent jurisdiction
within the United States." Id. at 26.

The Policy also contains a number of conditions precedent to
coverage, including one regarding cooperation, that requires PBM to

2

"co-operate[] fully with the Underwriters in its investigation of the claim" in a variety of respects. Id. at 14.

On February 2, 2009, PBM notified the Underwriters of a claim for coverage arising out of a contamination of baby formula at its Burlington, Vermont manufacturing facility. Id. ¶ 11, Answer ¶ 11 ("the Contamination"). According to PBM, three other insurers (in addition to the Underwriters) issued insurance policies to PBM that allegedly provide coverage for the Contamination.[1] Specifically, Lexington Insurance Company, Arch Insurance Company, and ACE American Insurance Company each issued Commercial Property Insurance Policies to PBM for the policy period January 10, 2009 to January 10, 2010, each of which vary to some degree and contain a variety of policy provisions and exclusions. See Def. Motion to Dismiss Exs. D, E, F.

On February 26, 2009, after the Underwriters' adjuster conducted his investigation and inspected the contamination site, the Underwriters informed PBM that they needed to reserve their rights on certain Policy provisions until the investigation could be completed. Compl. ¶ 13 and Ex. C, Answer ¶ 13. The letter asserted 15 policy provisions and exclusions, noting that, at that stage, the Underwriters were "unable to determine if these conditions apply." Id. Ex. C. The Underwriters' letter also contained a long list of document requests, noting that such documents were needed "in order to reach a coverage decision as quickly as possible." Id. PBM

---

[1] The Policy contains an "Other Insurance" provision that provides methods for calculating contribution when multiple insurers are involved. Compl. Ex. A at 18.

contends that "it has complied with most of Plaintiff's document requests and continues to supply information to Plaintiff's adjuster," Answer ¶ 14, while the Underwriters, in turn, allege that "[t]o this date, PBM has not provided the requested information and documents." Compl. ¶ 15.

On March 31, 2009 (six days before the instant action was filed), PBM Nutritionals (but not PBM Holdings) filed a declaratory judgment action in the United States District Court, Eastern District of Virginia, 09 Civ. 194 (the "Virginia Action"), against defendants XL Insurance America, Inc. (the name of the specific insurer listed in the Underwriters' Policy), ACE, Arch, and Lexington. See id. Ex. D, Answer ¶ 16. The complaint (the "Virginia Complaint") sought a judicial determination of the various insurers' respective obligations to provide insurance coverage for the Contamination. See id. On April 6, 2009, the Underwriters commenced the instant action against both PBM entities. On April 13, 2009, PBM Nutritionals, after learning that XL Insurance did not write the policy in question, amended the Virginia Complaint to name Underwriters as a defendant. See Affidavit of Robert J. Cosgrove Ex. 7; Def. Reply Mem. Ex. M.

Against this background, the Court turns first to PBM's motion to dismiss pursuant to the "first-to-file" rule. There is a general presumption that "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience . . . or . . . special circumstances . . . giving priority to the second." First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989) (citation omitted)

4

(alterations in original).  This presumption, however, is not to be applied in a "rigid" or "mechanical" way, Columbia Pictures Indus., Inc. v. Schneider, 435 F. Supp. 742, 747 (S.D.N.Y. 1977), and is quite commonly overcome where circumstances warrant.  See Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc., 804 F.2d 16, 19 (2d Cir. 1986).

Here, PBM argues that the Virginia Action is the first-filed action, because, as noted, that action was filed six days before the instant action was filed.  The Underwriters, in turn, contend that the instant action is the first-filed action, because the Virginia Complaint was not amended to add the Underwriters as a defendant until one week after this action was commenced.  See Nat'l Equip. Rental, Ltd. v. Fowler, 287 F.2d 43, 45 (2d Cir. 1961) (noting that the first-to-file doctrine is based on the proposition that "the first court to obtain jurisdiction of the parties and of the issues should have priority over a second court to do so").  The Court need not resolve this dispute, however, because, even assuming that the Virginia Action was the first to be filed, it is clear that dismissal on that basis would not be warranted here.

As noted, the Policy provides that "any action relating to any dispute under this Policy shall only be brought in [the state and federal courts in New York]."  PBM argues that this is modified by the endorsement containing the Underwriters' consent "to the jurisdiction of a Court of competent jurisdiction within the United States."  But this argument misapprehends the distinction between a forum selection clause and a service of suit clause.

5

Under New York law (here expressly applicable), it is well-settled that a service of suit clause (unlike a mandatory forum selection clause) "generally provides no more than a consent to jurisdiction. It does not bind the parties to litigate in a particular forum, or give the insured the exclusive right to choose a forum unrelated to the dispute." Brooke Group Ltd. v. JCH Synd. 488, 87 N.Y.2d 530, 534 (1996). In fact, the Service of Suit Clause at issue here contains common language frequently used by Lloyd's of London in order "to assure potential policyholders that Lloyd's and its underwriters would be amenable to service of process in the United States." Id.; see also Appalachian Ins. Co. v. Superior Ct., 208 Cal. Rptr. 627, 629 (Cal. App. 2d Dist. 1984) (same); In re Delta Am. Reins. Co., 900 F.2d 890, 893 (6th Cir. 1990) (noting that it would be more appropriate to describe a service of suit clause as a "submit to the jurisdiction of a court within the United States clause") (citations and quotations omitted).

Thus, because the Service of Suit Clause "is not a 'choice of forum' provision," and does not "prescribe the forum for the action," but instead "entail[s] no more than [Lloyd's] voluntary submission to the jurisdiction of the United States," Brooke Group, 87 N.Y.2d at 199, there is no conflict between that provision and the Policy's mandatory forum selection clause. To the contrary, the clauses are perfectly complementary: the Service of Suit Clause merely ensures that Underwriters are subject to suit in the United States, and the Forum Selection Clause, in turn, designates the forum in which any disputes between the parties are to be litigated, namely, the state

6

and federal courts of New York. Moreover, since the endorsement containing the Service of Suit Clause does not include any language purporting to overrule or modify the Forum Selection Clause, the two clauses should not be read as inconsistent but as complimentary. See U.S. Underwriters Ins. Co. v. Affordable Housing Found., Inc., 256 F. Supp. 2d 176, 181 (S.D.N.Y. 2003) ("[w]hen construing the terms of an insurance contract, an interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable"). Thus, because the forum selection clause unequivocally requires the parties to litigate any dispute arising under the Policy in New York, any effort by PBM to dismiss this action in favor of the Virginia Action must fail.

Although this is dispositive, the Court also notes that, in any event, a variety of "special circumstances" also militate against applying the first-to-file rule in the instant action. First, only six days passed between the filing of the two actions, thus demonstrating that "no judicial inefficiency or duplication of efforts will result from requiring the parties to litigate their dispute" here. Columbia Pictures, 435 F. Supp. at 748. Second, as noted, PBM Holdings is not a party to the Virginia Action, the three other insurers are not a party to the instant action, and the instant dispute solely relates to the Underwriters' contamination policy and PBM's alleged failure to cooperate, whereas the Virginia Action relates to the alleged coverage dispute among policies issued by a multitude of insurers. See Curtis v. Citibank, N.A., 226 F.3d 133,

136 (2d Cir. 2000) (dismissal inappropriate where claims in both suits were "not entirely duplicative"). Third, it bears noting that PBM Nutritionals chose to commence an action in Virginia notwithstanding the clear and mandatory agreement between the parties to litigate in New York. This fact, coupled with the marginal connection between Virginia and the instant dispute, indicate that forum shopping was, if not the primary, at least one motivating factor behind PBM Nutritional's decision to bring suit in Virginia. Cf. William Gluckin & Co., Inc. v. Int'l Playtex Corp., 407 F.2d 177, 178 (2d Cir. 1969). Finally, as discussed below in the context of PBM's motion to transfer venue, the balance of convenience weighs in favor of this Court retaining the instant action.

Accordingly, for each and all of the foregoing reasons, the Court hereby reaffirms its denial of PBM's motion to dismiss pursuant to the "first-to-file" rule.

PBM next argues that the three absent insurers who issued insurance policies to PBM are necessary and indispensable parties to this action, because, with multiple absent insurers and one loss, PBM somehow faces a risk that this Court could make a coverage determination that would conflict with any decision reached in the Virginia Action. Because joinder of one of these absent insurers would destroy diversity jurisdiction, PBM argues, dismissal is warranted.

PBM's argument fails, however, because, among other things, the Policy issued by the Underwriters provides a different kind of coverage from the policies issued by the three other insurers, thus

8

rendering them wholly dispensable.  Cf. Special Jet Servs., Inc. v. Fed. Ins. Co., 83 F.R.D. 596, 599-600 (W.D. Pa. 1979) ("a third party is not a necessary or indispensable party to an action to determine the rights of other parties under a contract, simply because the third party's rights or obligations under an entirely separate contract will be seriously affected by the action").  Specifically, the Policy at issue here is a product contamination insurance policy, and any coverage determination that this Court makes under that policy will have no bearing on PBM's rights under the other, unrelated commercial property policies issued by the three other insurers covering different categories of losses.[2]  Furthermore, to the extent that the Policy's "Other Insurance" clause arguably requires the various insurers to resolve disputes among themselves, nothing prevents them from later seeking contribution.  See, e.g.,

_____

[2] For this reason, the cases relied upon by PBM are inapposite.  In Evergreen Park Nursing & Convalescent Home Inc. v. American Equitable Assurance Company, for instance, "the issues of fact and law [were] the same with respect to each policy, and presumably all six companies [were] liable or else none [was]."  417 F.2d 1113, 1115 (7th Cir. 1969).  Similarly, in Schlumberger Industries v. National Sur. Co., all three policies at issue were commercial general liability policies with different policy periods, thus giving rise to a risk that the insured would be unable to recover for a covered loss due to different results in different fora.  36 F.3d 1274, 1286 (4th Cir. 1994).  PBM also relies on this Court's decision in Employer Ins. Of Wausau v. El Paso Tenn. Pipeline Co., but that case involved questions of abstention, and did not address whether the non-party insurers were indispensable parties. 98 Civ. 4612, 1998 U.S. Dist. LEXIS 18069, at *5 (S.D.N.Y. Nov. 12, 1998).  Moreover, the parallel action at issue in that case had been pending in California for over a year, and this Court's dismissal was premised on plaintiff's attempt to "institute piecemeal litigation in another forum, thereby threatening to circumvent the California case."  Id. at *4.

9

Brinco Mining Ltd. v. Fed. Ins. Co., 552 F. Supp. 1233, 1238-39
(D.D.C. 1982) (noting that the mere presence of "other insurances"
clauses is not enough to mandate a finding of indispensability, and
that insurer could later seek contribution from other insurers).
Finally, as noted, the primary issue presented in this action is
whether PBM complied with a condition precedent to coverage under the
Policy, and a determination as to that issue has no bearing on PBM's
rights under its other insurance policies. Accordingly, PBM's motion
to dismiss on grounds of failure to join indispensable parties must
be denied.

Finally, PBM argues that, as a matter of convenience, the
instant action should be transferred to the Eastern District of
Virginia pursuant to 28 U.S.C. § 1404(a). The Court disagrees.

"[M]otions for transfer lie within the broad discretion of the
district court and are determined upon notions of convenience and
fairness on a case-by-case basis." In re Cuyahoga Equip. Corp., 980
F.2d 110, 117 (2d Cir. 1992). Included among the factors a district
courts on a motion to transfer are, inter alia, "(1) the plaintiff's
choice of forum, (2) the convenience of witnesses, (3) the location
of relevant documents and relative ease of access to sources of
proof, (4) the convenience of the parties, (5) the locus of operative
facts, (6) the availability of process to compel the attendance of
unwilling witnesses, (7) the relative means of the parties, (8) the
forum's familiarity with the governing law, and (9) trial efficiency
and the interests of justice, based on the totality of the
circumstances." Albert Fadem Trust v. Duke Energy Corp., 214 F.

10

Supp. 2d 341, 343 (S.D.N.Y. 2002); see D.H. Blair & Co., Inc. v. Wood, 462 F.3d 95, 106-07 (2d Cir. 2006) (same).

The Court begins by noting that a "forum selection clause is determinative of the convenience of the parties." Orix Credit Alliance, Inc. v. Mid-South Materials Corp., 816 F. Supp. 230, 234 (S.D.N.Y. 1993). But even if that were not so, substantial weight is accorded a plaintiff's choice of forum, Albert Fadem Trust, 214 F. Supp. 2d at 343. Moreover, the Contamination itself occurred in Vermont, and there are many relevant witnesses with knowledge of the loss who are located there, who would find it far more convenient to travel to New York, an adjoining state, than to Virginia. See Nat'l Patent Dev. Corp. v. Amer. Hosp. Supply Corp., 616 F. Supp. 114, 121 (S.D.N.Y. 1984) (Weinfeld, J.) (denying motion to transfer where relevant witnesses were located "within reasonable proximity" to the Southern District of New York). Further, as noted, the Policy contains a New York choice-of-law clause, and this action is thus "at home with the state law that must govern the case." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947). Since none of the remaining factors weighs strongly in favor of transfer, it is obvious that the motion to transfer under § 1404(a) must also be denied.

The Court therefore turns to the Underwriters' motion for judgment on the pleadings. Under New York law, while "the failure of an insured to cooperate with the insurer is a breach of a significant condition precedent of the policy which bars the insured's recovery under the policy," Allstate Ins. Co. v. Longwell, 735 F. Supp. 1187, 1193 (S.D.N.Y. 1990), the insurer carries a heavy burden in proving

11

that the insured breached the duty to cooperate, Thrasher v. United States Liab. Ins. Co., 19 N.Y.2d 159, 168 (1967), and is thus required to demonstrate that "(1) it acted diligently in seeking to bring about the insured's cooperation, (2) its efforts were reasonably calculated to obtain the insured's cooperation, and (3) the attitude of the insured, after its cooperation was sought, was one of willful and avoided obstruction." Country-Wide Ins. Co. v. Henderson, 50 A.D.3d 789, 790 (2d Dep't 2008). Here, the mere fact that PBM notes in its Answer that it has complied with "most" of the Underwriters' requests, Answer ¶ 14, thus suggesting by implication that it has not yet complied with all of them, is hardly tantamount to an admission of the foregoing elements, especially since PBM denies refusing to cooperate in the investigation and avers that it has "continue[d] to supply information to Plaintiff's adjuster." See Answer ¶¶ 14-15. Further, although Underwriters argue that PBM's commencement of litigation in Virginia amounts to a per se refusal to cooperate, the Policy at issue here does not contain a "no-action" clause, and, on the face of the pleadings, the Court is unable to assess or evaluate the circumstances surrounding PBM's decision to bring suit. In such circumstances, the Underwriters have failed to meet their heavy burden of demonstrating that they are entitled to judgment on the pleadings as to PBM's alleged failure to cooperate. See Porter v. Traders' Ins. Co., 164 N.Y. 504, 509 (1900) (whether an insured has failed to cooperate is usually a question of fact reserved for the jury).

Accordingly, for all of the foregoing reasons, the Court hereby

reaffirms its denial of PBM's motions to dismiss or to transfer and the Underwriters' cross-motion for judgment on the pleadings.

JED S. RAKOFF, U.S.D.J.

Dated:    New York, New York
          July 31, 2009

13